**NOT YET SCHEDULED FOR ORAL ARGUMENT**
No. 24-1318

_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

BEYOND NUCLEAR, INC. and THE SIERRA CLUB, INC.,
*Petitioners*,
v.
UNITES STATES NUCLEAR REGULATORY COMMISSION
and the UNITED STATES OF AMERICA,
*Respondents,*

NUCLEAR ENERGY INSTITUTE*, et al.*
*Intervenors.*

_____

On Petition for Review of an Order of the
United States Nuclear Regulatory Commission

_____

**FEDERAL RESPONDENTS' SEPARATE ADDENDUM
OF STATUTES AND REGULATIONS**

_____

BROOKE P. CLARK
*General Counsel*
ANDREW P. AVERBACH
*Solicitor*
MAXWELL C. SMITH
*Senior Attorney*
U.S. Nuclear Regulatory
Commission
11555 Rockville Pike
Rockville, MD 20852
(301) 415-1956
andrew.averbach@nrc.gov

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
CHRISTOPHER ANDERSON
*Attorney*
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 353-1834
christopher.anderson3@usdoj.gov

# TABLE OF CONTENTS

5 U.S.C. § 706 ................................................................1a

28 U.S.C. § 2342 ............................................................2a

42 U.S.C. § 2133 ............................................................3a

42 U.S.C. § 2239 ............................................................5a

42 U.S.C. § 4332 ............................................................9a

42 U.S.C. § 4336a ........................................................13a

10 C.F.R. § 2.202 ..........................................................20a

10 C.F.R. § 2.206 ..........................................................25a

10 C.F.R. § 2.309 ..........................................................27a

10 C.F.R. § 2.335 ..........................................................38a

10 C.F.R. § 2.801 ..........................................................40a

10 C.F.R. § 50.65 ..........................................................40a

10 C.F.R. § 51.53 ..........................................................42a

10 C.F.R. § 51.95 ..........................................................48a

10 C.F.R. § 54.29 ..........................................................51a

10 C.F.R. § 54.31 ..........................................................52a

10 C.F.R. § 54.33 ..........................................................53a

**5 U.S.C. § 706**

Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (B) contrary to constitutional right, power, privilege, or immunity;

> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

> (D) without observance of procedure required by law;

> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**28 U.S.C. § 2342**

Jurisdiction of court of appeals

The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--

> (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47;

> (2) all final orders of the Secretary of Agriculture made under chapters 9 and 20A of title 7, except orders issued under sections 210(e), 217a, and 499g(a) of title 7;

> (3) all rules, regulations, or final orders of--

> (A) the Secretary of Transportation issued pursuant to section 50501, 50502, 56101-56104, or 57109 of title 46 or pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49; and

> (B) the Federal Maritime Commission issued pursuant to section 305, 41304, 41308, or 41309 or chapter 421 or 441 of title 46;

> (4) all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42;

> (5) all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title;

> (6) all final orders under section 812 of the Fair Housing Act; and

> (7) all final agency actions described in section 20114(c) of title 49.

Jurisdiction is invoked by filing a petition as provided by section 2344 of this title.

**42 U.S.C. § 2133**

§2133. Commercial licenses

(a) Conditions

The Commission is authorized to issue licenses to persons applying therefor to transfer or receive in interstate commerce, manufacture, produce, transfer, acquire, possess, use, import, or export under the terms of an agreement for cooperation arranged pursuant to section 2153 of this title, utilization or production facilities for industrial or commercial purposes. Such licenses shall be issued in accordance with the provisions of subchapter XV and subject to such conditions as the Commission may by rule or regulation establish to effectuate the purposes and provisions of this chapter.

(b) Nonexclusive basis

The Commission shall issue such licenses on a nonexclusive basis to persons applying therefor (1) whose proposed activities will serve a useful purpose proportionate to the quantities of special nuclear material or source material to be utilized; (2) who are equipped to observe and who agree to observe such safety standards to protect health and to minimize danger to life or property as the Commission may by rule establish; and (3) who agree to make available to the Commission such technical information and data concerning activities under such licenses as the Commission may determine necessary to promote the common defense and security and to protect the health and safety of the public. All such information may be used by the Commission only for the purposes of the common defense and security and to protect the health and safety of the public.

(c) License period

Each such license shall be issued for a specified period, as determined by the Commission, depending on the type of activity to be licensed, but

3a

not exceeding forty years from the authorization to commence operations, and may be renewed upon the expiration of such period.

(d) Limitations

No license under this section may be given to any person for activities which are not under or within the jurisdiction of the United States, except for the export of production or utilization facilities under terms of an agreement for cooperation arranged pursuant to section 2153 of this title, or except under the provisions of section 2139 of this title. No license may be issued to an alien or any corporation or other entity if the Commission knows or has reason to believe it is owned, controlled, or dominated by an alien, a foreign corporation, or a foreign government. In any event, no license may be issued to any person within the United States if, in the opinion of the Commission, the issuance of a license to such person would be inimical to the common defense and security or to the health and safety of the public.

(f) Accident notification condition; license revocation; license amendment to include condition

Each license issued for a utilization facility under this section or section 2134(b) of this title shall require as a condition thereof that in case of any accident which could result in an unplanned release of quantities of fission products in excess of allowable limits for normal operation established by the Commission, the licensee shall immediately so notify the Commission. Violation of the condition prescribed by this subsection may, in the Commission's discretion, constitute grounds for license revocation. In accordance with section 2237 of this title, the Commission shall promptly amend each license for a utilization facility issued under this section or section 2134(b) of this title which is in effect on June 30, 1980, to include the provisions required under this subsection.

4a

**42 U.S.C. § 2239**

Hearings and judicial review

(a)(1)(A) In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit, or application to transfer control, and in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees, and in any proceeding for the payment of compensation, an award or royalties under sections1 2183, 2187, 2236(c) or 2238 of this title, the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding. The Commission shall hold a hearing after thirty days' notice and publication once in the Federal Register, on each application under section 2133 or 2134(b) of this title for a construction permit for a facility, and on any application under section 2134(c) of this title for a construction permit for a testing facility. In cases where such a construction permit has been issued following the holding of such a hearing, the Commission may, in the absence of a request therefor by any person whose interest may be affected, issue an operating license or an amendment to a construction permit or an amendment to an operating license without a hearing, but upon thirty days' notice and publication once in the Federal Register of its intent to do so. The Commission may dispense with such thirty days' notice and publication with respect to any application for an amendment to a construction permit or an amendment to an operating license upon a determination by the Commission that the amendment involves no significant hazards consideration.

(B)(i) Not less than 180 days before the date scheduled for initial loading of fuel into a plant by a licensee that has been issued a combined construction permit and operating license under section 2235(b) of this title, the Commission shall publish in the Federal Register notice of intended operation. That notice shall provide that any

person whose interest may be affected by operation of the plant, may within 60 days request the Commission to hold a hearing on whether the facility as constructed complies, or on completion will comply, with the acceptance criteria of the license.

(ii)    A request for hearing under clause (i) shall show, prima facie, that one or more of the acceptance criteria in the combined license have not been, or will not be met, and the specific operational consequences of nonconformance that would be contrary to providing reasonable assurance of adequate protection of the public health and safety.

(iii)    After receiving a request for a hearing under clause (i), the Commission expeditiously shall either deny or grant the request. If the request is granted, the Commission shall determine, after considering petitioners' prima facie showing and any answers thereto, whether during a period of interim operation, there will be reasonable assurance of adequate protection of the public health and safety. If the Commission determines that there is such reasonable assurance, it shall allow operation during an interim period under the combined license.

(iv)    The Commission, in its discretion, shall determine appropriate hearing procedures, whether informal or formal adjudicatory, for any hearing under clause (i), and shall state its reasons therefor.

(v)    The Commission shall, to the maximum possible extent, render a decision on issues raised by the hearing request within 180 days of the publication of the notice provided by clause (i) or the anticipated date for initial loading of fuel into the reactor, whichever is later. Commencement of operation under a combined license is not subject to subparagraph (A).

(2)(A) The Commission may issue and make immediately effective any amendment to an operating license or any amendment to a combined construction and operating license, upon a determination by the Commission that such amendment involves no significant hazards

6a

consideration, notwithstanding the pendency before the Commission of a request for a hearing from any person. Such amendment may be issued and made immediately effective in advance of the holding and completion of any required hearing. In determining under this section whether such amendment involves no significant hazards consideration, the Commission shall consult with the State in which the facility involved is located. In all other respects such amendment shall meet the requirements of this chapter.

(B)   The Commission shall periodically (but not less frequently than once every thirty days) publish notice of any amendments issued, or proposed to be issued, as provided in subparagraph (A). Each such notice shall include all amendments issued, or proposed to be issued, since the date of publication of the last such periodic notice. Such notice shall, with respect to each amendment or proposed amendment (i) identify the facility involved; and (ii) provide a brief description of such amendment. Nothing in this subsection shall be construed to delay the effective date of any amendment.

(C)   The Commission shall, during the ninety-day period following the effective date of this paragraph, promulgate regulations establishing (i) standards for determining whether any amendment to an operating license or any amendment to a combined construction and operating license involves no significant hazards consideration; (ii) criteria for providing or, in emergency situations, dispensing with prior notice and reasonable opportunity for public comment on any such determination, which criteria shall take into account the exigency of the need for the amendment involved; and (iii) procedures for consultation on any such determination with the State in which the facility involved is located.

(b) The following Commission actions shall be subject to judicial review in the manner prescribed in chapter 158 of Title 28 and chapter 7 of Title 5:

    (1)    Any final order entered in any proceeding of the kind specified in subsection (a).

    (2)    Any final order allowing or prohibiting a facility to begin operating under a combined construction and operating license.

    (3)    Any final order establishing by regulation standards to govern the Department of Energy's gaseous diffusion uranium enrichment plants, including any such facilities leased to a corporation established under the USEC Privatization Act.

    (4)    Any final determination under section 2297f(c) of this title relating to whether the gaseous diffusion plants, including any such facilities leased to a corporation established under the USEC Privatization Act, are in compliance with the Commission's standards governing the gaseous diffusion plants and all applicable laws.

**42 U.S.C. § 4332**

Cooperation of agencies; reports; availability of information; recommendations; international and national coordination of efforts

The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

(A) utilize a systematic, interdisciplinary approach which will ensure the integrated use of the natural and social sciences and the environmental design arts in planning and in decisionmaking which may have an impact on man's environment;

(B) identify and develop methods and procedures, in consultation with the Council on Environmental Quality established by subchapter II of this chapter, which will ensure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations;

(C) consistent with the provisions of this chapter and except where compliance would be inconsistent with other statutory requirements, include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) reasonably foreseeable environmental effects of the proposed agency action;

(ii) any reasonably foreseeable adverse environmental effects which cannot be avoided should the proposal be implemented;

(iii) a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action in the case of a no action alternative, that are technically and economically feasible, and meet the purpose and need of the proposal;

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and

(vi)    any irreversible and irretrievable commitments of Federal resources which would be involved in the proposed agency action should it be implemented.

Prior to making any detailed statement, the head of the lead agency shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5, and shall accompany the proposal through the existing agency review processes;

(D) ensure the professional integrity, including scientific integrity, of the discussion and analysis in an environmental document;

(E) make use of reliable data and resources in carrying out this chapter;

(F) consistent with the provisions of this chapter, study, develop, and describe technically and economically feasible alternatives;

(G) any detailed statement required under subparagraph (C) after January 1, 1970, for any major Federal action funded under a program of grants to States shall not be deemed to be legally

insufficient solely by reason of having been prepared by a State agency or official, if:

(i) the State agency or official has statewide jurisdiction and has the responsibility for such action,

(ii) the responsible Federal official furnishes guidance and participates in such preparation,

(iii) the responsible Federal official independently evaluates such statement prior to its approval and adoption, and

(iv) after January 1, 1976, the responsible Federal official provides early notification to, and solicits the views of, any other State or any Federal land management entity of any action or any alternative thereto which may have significant impacts upon such State or affected Federal land management entity and, if there is any disagreement on such impacts, prepares a written assessment of such impacts and views for incorporation into such detailed statement.

The procedures in this subparagraph shall not relieve the Federal official of his responsibilities for the scope, objectivity, and content of the entire statement or of any other responsibility under this chapter; and further, this subparagraph does not affect the legal sufficiency of statements prepared by State agencies with less than statewide jurisdiction.

(H) study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources;

(I) consistent with the provisions of this chapter, recognize the worldwide and long-range character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolutions, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment;

(J) make available to States, counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment;

(K) initiate and utilize ecological information in the planning and development of resource-oriented projects; and

(L) assist the Council on Environmental Quality established by subchapter II of this chapter.

**42 U.S.C. § 4336a**

Timely and unified Federal reviews

(a) Lead agency

(1) Designation

(A) In general

If there are two or more participating Federal agencies, such agencies shall determine, by letter or memorandum, which agency shall be the lead agency based on consideration of the—

(i) magnitude of agency's involvement;

(ii) project approval or disapproval authority;

(iii) expertise concerning the action's environmental effects;

(iv) duration of agency's involvement; and

(v) sequence of agency's involvement.

(B) Joint lead agencies

In making a determination under subparagraph (A), the participating Federal agencies may appoint such State, Tribal, or local agencies as joint lead agencies as the involved Federal agencies shall determine appropriate. Joint lead agencies shall jointly fulfill the role described in paragraph (2).

(2) Role

A lead agency shall, with respect to a proposed agency action—

(A) supervise the preparation of an environmental document if, with respect to such proposed agency action, there is more than one participating Federal agency;

(B) request the participation of each cooperating agency at the earliest practicable time;

13a

(C) in preparing an environmental document, give consideration to any analysis or proposal created by a cooperating agency;

(D) develop a schedule, in consultation with each cooperating agency, the applicant, and such other entities as the lead agency determines appropriate, for completion of any environmental review, permit, or authorization required to carry out the proposed agency action;

(E) if the lead agency determines that a review, permit, or authorization will not be completed in accordance with the schedule developed under subparagraph (D), notify the agency responsible for issuing such review, permit, or authorization of the discrepancy and request that such agency take such measures as such agency determines appropriate to comply with such schedule; and

(F) meet with a cooperating agency that requests such a meeting.

(3) Cooperating agency

The lead agency may, with respect to a proposed agency action, designate any Federal, State, Tribal, or local agency that has jurisdiction by law or special expertise with respect to any environmental impact involved in a proposal to serve as a cooperating agency. A cooperating agency may, not later than a date specified in the schedule established by the lead agency, submit comments to the lead agency.

(4) Request for designation

Any Federal, State, Tribal, or local agency or person that is substantially affected by the lack of a designation of a lead agency with respect to a proposed agency action under paragraph (1) may submit a written request for such a designation to a participating Federal agency. An agency that receives a request under this paragraph shall transmit such request to each participating Federal agency and to the Council.

(5) Council designation

(A) Request

If the participating Federal agencies are unable to agree on the designation of a lead agency within 45 days of the request under paragraph (4), then the Federal, State, Tribal or local agency or person that is substantially affected by the lack or a designation of a lead agency may request that the Council designate a lead agency. Such request shall consist of—

(i) a precise description of the nature and extent of the proposed agency action; and

(ii) a detailed statement with respect to each participating Federal agency and each factor listed in paragraph (1) regarding which agency should serve as lead agency.

(B) Transmission

The Council shall transmit a request received under subparagraph (A) to each participating Federal agency.

(C) Response

A participating Federal agency may, not later than 20 days after the date of the submission of a request under subparagraph (A), submit to the Council a response to such request.

(D) Designation

Not later than 40 days after the date of the submission of a request under subparagraph (A), the Council shall designate the lead agency with respect to the relevant proposed agency action.

(b) One document

To the extent practicable, if a proposed agency action will require action by more than one Federal agency and the lead agency has determined that it requires preparation of an environmental document, the lead and cooperating agencies shall evaluate the proposal in a single environmental document.

15a

(c) Request for public comment

Each notice of intent to prepare an environmental impact statement under section 4332 of this title shall include a request for public comment on alternatives or impacts and on relevant information, studies, or analyses with respect to the proposed agency action.

(d) Statement of purpose and need

Each environmental document shall include a statement of purpose and need that briefly summarizes the underlying purpose and need for the proposed agency action.

(e) Page limits

(1)Environmental impact statements

(A) In general

Except as provided in subparagraph (B), an environmental impact statement shall not exceed 150 pages, not including any citations or appendices.

(B) Extraordinary complexity

An environmental impact statement for a proposed agency action of extraordinary complexity shall not exceed 300 pages, not including any citations or appendices.

(2) Environmental assessments

An environmental assessment shall not exceed 75 pages, not including any citations or appendices.

(f) Sponsor preparation

A lead agency shall prescribe procedures to allow a project sponsor to prepare an environmental assessment or an environmental impact statement under the supervision of the agency. Such agency may provide such sponsor with appropriate guidance and assist in the preparation. The lead agency shall independently evaluate

the environmental document and shall take responsibility for the contents.

(g) Deadlines

(1) In general

Except as provided in paragraph (2), with respect to a proposed agency action, a lead agency shall complete, as applicable—

(A) the environmental impact statement not later than the date that is 2 years after the sooner of, as applicable—

(i) the date on which such agency determines that section 4332(2)(C) of this title requires the issuance of an environmental impact statement with respect to such action;

(ii) the date on which such agency notifies the applicant that the application to establish a right-of-way for such action is complete; and

(iii) the date on which such agency issues a notice of intent to prepare the environmental impact statement for such action; and

(B) the environmental assessment not later than the date that is 1 year after the sooner of, as applicable—

(i) the date on which such agency determines that section 4336(b)(2) of this title requires the preparation of an environmental assessment with respect to such action;

(ii) the date on which such agency notifies the applicant that the application to establish a right-of-way for such action is complete; and

(iii) the date on which such agency issues a notice of intent to prepare the environmental assessment for such action.

(2) Delay

A lead agency that determines it is not able to meet the deadline described in paragraph (1) may extend such deadline, in consultation with the applicant, to establish a new deadline that provides only so

much additional time as is necessary to complete such environmental impact statement or environmental assessment.

(3) Petition to court

(A) Right to petition

A project sponsor may obtain a review of an alleged failure by an agency to act in accordance with an applicable deadline under this section by filing a written petition with a court of competent jurisdiction seeking an order under subparagraph (B).

(B) Court order

If a court of competent jurisdiction finds that an agency has failed to act in accordance with an applicable deadline, the court shall set a schedule and deadline for the agency to act as soon as practicable, which shall not exceed 90 days from the date on which the order of the court is issued, unless the court determines a longer time period is necessary to comply with applicable law.

(h) Report

(1) In general

The head of each lead agency shall annually submit to the Committee on Natural Resources of the House of Representatives and the Committee on Environment and Public Works of the Senate a report that—

(A) identifies any environmental assessment and environmental impact statement that such lead agency did not complete by the deadline described in subsection (g); and

(B) provides an explanation for any failure to meet such deadline.

(2) Inclusions

Each report submitted under paragraph (1) shall identify, as applicable—

18a

(A) the office, bureau, division, unit, or other entity within the Federal agency responsible for each such environmental assessment and environmental impact statement;

(B) the date on which—

(i) such lead agency notified the applicant that the application to establish a right-of-way for the major Federal action is complete;

(ii) such lead agency began the scoping for the major Federal action; or

(iii) such lead agency issued a notice of intent to prepare the environmental assessment or environmental impact statement for the major Federal action; and

(C) when such environmental assessment and environmental impact statement is expected to be complete.

**10 C.F.R. § 2.202**

Orders

(a) The Commission may institute a proceeding to modify, suspend, or revoke a license or to take such other action as may be proper by serving on the licensee or other person subject to the jurisdiction of the Commission an order that will:

(1) Allege the violations with which the licensee or other person subject to the Commission's jurisdiction is charged, or the potentially hazardous conditions or other facts deemed to be sufficient ground for the proposed action, and specify the action proposed;

(2) Provide that the licensee or other person must file a written answer to the order under oath or affirmation within twenty (20) days of its date, or such other time as may be specified in the order;

(3)(i) Inform the licensee or any other person to whom the order was issued of their right, within twenty (20) days of the date of the order, or within such other time as may be specified in the order, to demand a hearing on all or part of the order, except in a case where the licensee or other person to whom the order was issued has consented in writing to the order;

(ii) State that a request for a hearing by any other person who may be adversely affected by the order must be made within twenty (20) days of the date of the order, or within such other time as may be specified in the order, and must meet the requirements of § 2.309;

(4) Specify the issues for hearing; and

(5) State the effective date of the order; if the Commission finds that the public health, safety, or interest so requires or that the violation or conduct causing the violation is willful, the order may provide, for stated reasons, that the proposed action be immediately effective pending further order.

(b) A licensee or other person to whom the Commission has issued an order under this section must respond to the order by filing a written answer under oath or affirmation. The answer shall specifically admit or deny each allegation or charge made in the order, and shall set forth the matters of fact and law on which the licensee or other person relies, and, if the order is not consented to, the reasons as to why the order should not have been issued. Except as provided in paragraph (d) of this section, the answer may demand a hearing.

(c) If the answer demands a hearing, the Commission will issue an order designating the time and place of hearing.

(1) If the answer demands a hearing with respect to an immediately effective order, the hearing will be conducted expeditiously, giving due consideration to the rights of the parties.

(2)(i) The licensee or other person to whom the Commission has issued an immediately effective order in accordance with paragraph (a)(5) of this section, may, in addition to demanding a hearing, at the time the answer is filed or sooner, file a motion with the presiding officer to set aside the immediate effectiveness of the order on the ground that the order, including the need for immediate effectiveness, is not based on adequate evidence but on mere suspicion, unfounded allegations, or error. The motion must state with particularity the reasons why the order is not based on adequate evidence and must be accompanied by affidavits or other evidence relied on.

(ii) Any party may file a motion with the presiding officer requesting that the presiding officer order live testimony. Any motion for live testimony must be made in conjunction with the motion to set aside the immediate effectiveness of the order or any party's response thereto. The presiding officer may, on its own motion, order live testimony. The presiding officer's basis for approving any motion for, or ordering on its own motion, live testimony shall be that taking live testimony would assist in its decision on the motion to set aside the immediate effectiveness of the order.

21a

(iii) The NRC staff shall respond in writing within 5 days of the receipt of either a motion to set aside the immediate effectiveness of the order or the presiding officer's order denying a motion for live testimony. In cases in which the presiding officer orders live testimony, the staff may present its response through live testimony rather than a written response.

(iv) The presiding officer shall conduct any live testimony pursuant to its powers in § 2.319 of this part, except that no subpoenas, discovery, or referred rulings or certified questions to the Commission shall be permitted for this purpose.

(v) The presiding officer may, on motion by the staff or any other party to the proceeding, where good cause exists, delay the hearing on the immediately effective order at any time for such periods as are consistent with the due process rights of the licensee or other person and other affected parties.

(vi) The licensee or other person challenging the immediate effectiveness of an order bears the burden of going forward with evidence that the immediately effective order is not based on adequate evidence, but on mere suspicion, unfounded allegations, or error. The NRC staff bears the burden of persuading the presiding officer that adequate evidence supports the grounds for the immediately effective order and immediate effectiveness is warranted.

(vii) The presiding officer shall issue a decision on the motion to set aside the immediate effectiveness of the order expeditiously. During the pendency of the motion to set aside the immediate effectiveness of the order or at any other time, the presiding officer may not stay the immediate effectiveness of the order, either on its own motion, or upon motion of the licensee or other person.

(viii) The presiding officer shall uphold the immediate effectiveness of the order if it finds that there is adequate evidence to support immediate effectiveness. An order upholding immediate effectiveness

22a

will constitute the final agency action on immediate effectiveness. The presiding officer will promptly refer an order setting aside immediate effectiveness to the Commission and such order setting aside immediate effectiveness will not be effective pending further order of the Commission.

(d) An answer may consent to the entry of an order in substantially the form proposed in the order with respect to all or some of the actions proposed in the order. The consent, in the answer or other written document, of the licensee or other person to whom the order has been issued to the entry of an order shall constitute a waiver by the licensee or other person of a hearing, findings of fact and conclusions of law, and of all right to seek Commission and judicial review or to contest the validity of the order in any forum as to those matters which have been consented to or agreed to or on which a hearing has not been requested. An order that has been consented to shall have the same force and effect as an order made after hearing by a presiding officer or the Commission, and shall be effective as provided in the order.

(e)(1) If the order involves the modification of a part 50 license and is a backfit, the requirements of § 50.109 of this chapter shall be followed, unless the licensee has consented to the action required.

(2) If the order involves the modification of combined license under subpart C of part 52 of this chapter, the requirements of § 52.98 of this chapter shall be followed unless the licensee has consented to the action required.

(3) If the order involves a change to an early site permit under subpart A of part 52 of this chapter, the requirements of § 52.39 of this chapter must be followed, unless the applicant or licensee has consented to the action required.

(4) If the order involves a change to a standard design certification rule referenced by that plant's application, the requirements, if any, in the referenced design certification rule with respect to changes must be

23a

followed, or, in the absence of these requirements, the requirements of § 52.63 of this chapter must be followed, unless the applicant or licensee has consented to follow the action required.

(5) If the order involves a change to a standard design approval referenced by that plant's application, the requirements of § 52.145 of this chapter must be followed unless the applicant or licensee has consented to follow the action required.

(6) If the order involves a modification of a manufacturing license under subpart F of part 52, the requirements of § 52.171 of this chapter must be followed, unless the applicant or licensee has consented to the action required.

**10 C.F.R. § 2.206**

Requests for action under this subpart.

(a) Any person may file a request to institute a proceeding pursuant to § 2.202 to modify, suspend, or revoke a license, or for any other action as may be proper. Requests must be addressed to the Executive Director for Operations and must be filed either by hand delivery to the NRC's Offices at 11555 Rockville Pike, Rockville, Maryland; by mail or telegram addressed to the Executive Director for Operations, U.S. Nuclear Regulatory Commission, Washington, DC 20555-0001; or by electronic submissions, for example, via facsimile, Electronic Information Exchange, e-mail, or CD-ROM. Electronic submissions must be made in a manner that enables the NRC to receive, read, authenticate, distribute, and archive the submission, and process and retrieve it a single page at a time. Detailed guidance on making electronic submissions can be obtained by visiting the NRC's Web site at *http://www.nrc.gov/site-help/e-submittals.html*; by e-mail to *MSHD.Resource@nrc.gov*; or by writing the Office of the Chief Information Officer, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001. The request must specify the action requested and set forth the facts that constitute the basis for the request. The Executive Director for Operations will refer the request to the Director of the NRC office with responsibility for the subject matter of the request for appropriate action in accordance with paragraph (b) of this section.

(b) Within a reasonable time after a request pursuant to paragraph (a) of this section has been received, the Director of the NRC office with responsibility for the subject matter of the request shall either institute the requested proceeding in accordance with this subpart or shall advise the person who made the request in writing that no proceeding will be instituted in whole or in part, with respect to the request, and the reasons for the decision.

(c)(1) Director's decisions under this section will be filed with the Office of the Secretary. Within twenty-five (25) days after the date of the

Director's decision under this section that no proceeding will be instituted or other action taken in whole or in part, the Commission may on its own motion review that decision, in whole or in part, to determine if the Director has abused their discretion. This review power does not limit in any way either the Commission's supervisory power over delegated staff actions or the Commission's power to consult with the staff on a formal or informal basis regarding institution of proceedings under this section.

(2) No petition or other request for Commission review of a Director's decision under this section will be entertained by the Commission.

(3) The Secretary is authorized to extend the time for Commission review on its own motion of a Director's denial under paragraph (c) of this section.

**10 C.F.R. § 2.309**

Hearing requests, petitions to intervene, requirements for standing, and contentions.

(a) General requirements. Any person whose interest may be affected by a proceeding and who desires to participate as a party must file a written request for hearing and a specification of the contentions which the person seeks to have litigated in the hearing. In a proceeding under 10 CFR 52.103, the Commission, acting as the presiding officer, will grant the request if it determines that the requestor has standing under the provisions of paragraph (d) of this section and has proposed at least one admissible contention that meets the requirements of paragraph (f) of this section. For all other proceedings, except as provided in paragraph (e) of this section, the Commission, presiding officer, or the Atomic Safety and Licensing Board designated to rule on the request for hearing and/or petition for leave to intervene, will grant the request/petition if it determines that the requestor/petitioner has standing under the provisions of paragraph (d) of this section and has proposed at least one admissible contention that meets the requirements of paragraph (f) of this section. In ruling on the request for hearing/petition to intervene submitted by petitioners seeking to intervene in the proceeding on the HLW repository, the Commission, the presiding officer, or the Atomic Safety and Licensing Board shall also consider any failure of the petitioner to participate as a potential party in the pre-license application phase under subpart J of this part in addition to the factors in paragraph (d) of this section. If a request for hearing or petition to intervene is filed in response to any notice of hearing or opportunity for hearing, the applicant/licensee shall be deemed to be a party.

(b) Timing. Unless specified elsewhere in this chapter or otherwise provided by the Commission, the request or petition and the list of contentions must be filed as follows:

(1)    In proceedings for the direct or indirect transfer of control of an NRC license when the transfer requires prior approval of the NRC under the Commission's regulations, governing statute, or pursuant to a license condition, twenty (20) days from the date of publication of the notice in the Federal Register.

(2)    In proceedings for the initial authorization to construct a high-level radioactive waste geologic repository, and the initial licensee to receive and process high level radioactive waste at a geological repository operations area, thirty (30) days from the date of publication of the notice in the Federal Register.

(3)    In proceedings for which a Federal Register notice of agency action is published (other than a proceeding covered by paragraphs (b)(1) or (b)(2) of this section), not later than:

    (i)   The time specified in any notice of hearing or notice of proposed action or as provided by the presiding officer or the Atomic Safety and Licensing Board designated to rule on the request and/or petition, which may not be less than sixty (60) days from the date of publication of the notice in the Federal Register; or

    (ii)  If no period is specified, sixty (60) days from the date of publication of the notice.

    (iii) [Reserved by 73 FR 44620]

(4) In proceedings for which a Federal Register notice of agency action is not published, not later than the latest of:

    (i)    Sixty (60) days after publication of notice on the NRC Web site at http://www.nrc.gov/public-involve/major-actions.html, or

(ii)    Sixty (60) days after the requestor receives actual notice of a pending application, but not more than sixty (60) days after agency action on the application.

(c) Filings after the deadline; submission of hearing request, intervention petition, or motion for leave to file new or amended contentions—

(1) Determination by presiding officer. Hearing requests, intervention petitions, and motions for leave to file new or amended contentions filed after the deadline in paragraph (b) of this section will not be entertained absent a determination by the presiding officer that a participant has demonstrated good cause by showing that:

(i)    The information upon which the filing is based was not previously available;

(ii)    The information upon which the filing is based is materially different from information previously available; and

(iii)    The filing has been submitted in a timely fashion based on the availability of the subsequent information.

(2) Applicability of §§ 2.307 and 2.323.

(i)    Section 2.307 applies to requests to change a filing deadline (requested before or after that deadline has passed) based on reasons not related to the substance of the filing.

(ii)    Section 2.323 does not apply to hearing requests, intervention petitions, or motions for leave to file new or amended contentions filed after the deadline in paragraph (b) of this section.

(3)    New petitioner. A hearing request or intervention petition filed after the deadline in paragraph (b) of this section must

29a

include a specification of contentions if the petitioner seeks admission as a party, and must also demonstrate that the petitioner meets the applicable standing and contention admissibility requirements in paragraphs (d) and (f) of this section.

(4)    Party or participant. A new or amended contention filed by a party or participant to the proceeding must also meet the applicable contention admissibility requirements in paragraph (f) of this section. If the party or participant has already satisfied the requirements for standing under paragraph (d) of this section in the same proceeding in which the new or amended contentions are filed, it does not need to do so again.

(d) Standing.

(1)    General requirements. A request for hearing or petition for leave to intervene must state:

(i)    The name, address and telephone number of the requestor or petitioner;

(ii)    The nature of the requestor's/petitioner's right under the Act to be made a party to the proceeding;

(iii)    The nature and extent of the requestor's/petitioner's property, financial or other interest in the proceeding; and

(iv)    The possible effect of any decision or order that may be issued in the proceeding on the requestor's/petitioner's interest.

(2)    Rulings. In ruling on a request for hearing or petition for leave to intervene, the Commission, the presiding officer, or the Atomic Safety and Licensing Board designated to rule on such requests must determine, among other things, whether the

petitioner has an interest affected by the proceeding considering the factors enumerated in paragraph (d)(1) of this section.

(3)    Standing in enforcement proceedings. In enforcement proceedings, the licensee or other person against whom the action is taken shall have standing.

(e) Discretionary Intervention. The presiding officer may consider a request for discretionary intervention when at least one requestor/petitioner has established standing and at least one admissible contention has been admitted so that a hearing will be held. A requestor/petitioner may request that his or her petition be granted as a matter of discretion in the event that the petitioner is determined to lack standing to intervene as a matter of right under paragraph (d)(1) of this section. Accordingly, in addition to addressing the factors in paragraph (d)(1) of this section, a petitioner who wishes to seek intervention as a matter of discretion in the event it is determined that standing as a matter of right is not demonstrated shall address the following factors in his/her initial petition, which the Commission, the presiding officer or the Atomic Safety and Licensing Board will consider and balance:

(1) Factors weighing in favor of allowing intervention—

(i)    The extent to which the requestor's/petitioner's participation may reasonably be expected to assist in developing a sound record;

(ii)    The nature and extent of the requestor's/petitioner's property, financial or other interests in the proceeding; and

(iii)    The possible effect of any decision or order that may be issued in the proceeding on the requestor's/petitioner's interest;

(2) Factors weighing against allowing intervention—

31a

(i)    The availability of other means whereby the requestor's/petitioner's interest will be protected;

(ii)    The extent to which the requestor's/petitioner's interest will be represented by existing parties; and

(iii)    The extent to which the requestor's/petitioner's participation will inappropriately broaden the issues or delay the proceeding.

(f)  Contentions.

(1) A request for hearing or petition for leave to intervene must set forth with particularity the contentions sought to be raised. For each contention, the request or petition must:

(i)  Provide a specific statement of the issue of law or fact to be raised or controverted, provided further, that the issue of law or fact to be raised in a request for hearing under 10 CFR 52.103(b) must be directed at demonstrating that one or more of the acceptance criteria in the combined license have not been, or will not be met, and that the specific operational consequences of nonconformance would be contrary to providing reasonable assurance of adequate protection of the public health and safety;

(ii)    Provide a brief explanation of the basis for the contention;

(iii)    Demonstrate that the issue raised in the contention is within the scope of the proceeding;

(iv)    Demonstrate that the issue raised in the contention is material to the findings the NRC must make to support the action that is involved in the proceeding;

(v)    Provide a concise statement of the alleged facts or expert opinions which support the requestor's/petitioner's position on the issue and on which the petitioner intends

32a

to rely at hearing, together with references to the specific sources and documents on which the requestor/petitioner intends to rely to support its position on the issue;

(vi)   In a proceeding other than one under 10 CFR 52.103, provide sufficient information to show that a genuine dispute exists with the applicant/licensee on a material issue of law or fact. This information must include references to specific portions of the application (including the applicant's environmental report and safety report) that the petitioner disputes and the supporting reasons for each dispute, or, if the petitioner believes that the application fails to contain information on a relevant matter as required by law, the identification of each failure and the supporting reasons for the petitioner's belief; and

(vii)   In a proceeding under 10 CFR 52.103(b), the information must be sufficient, and include supporting information showing, prima facie, that one or more of the acceptance criteria in the combined license have not been, or will not be met, and that the specific operational consequences of nonconformance would be contrary to providing reasonable assurance of adequate protection of the public health and safety. This information must include the specific portion of the report required by 10 CFR 52.99(c) which the requestor believes is inaccurate, incorrect, and/or incomplete (i.e., fails to contain the necessary information required by § 52.99(c)). If the requestor identifies a specific portion of the § 52.99(c) report as incomplete and the requestor contends that the incomplete portion prevents the requestor from making the necessary prima facie showing, then the requestor must explain why this deficiency prevents the requestor from making the prima facie showing.

33a

(2)    Contentions must be based on documents or other information available at the time the petition is to be filed, such as the application, supporting safety analysis report, environmental report or other supporting document filed by an applicant or licensee, or otherwise available to a petitioner. On issues arising under the National Environmental Policy Act, participants shall file contentions based on the applicant's environmental report. Participants may file new or amended environmental contentions after the deadline in paragraph (b) of this section (e.g., based on a draft or final NRC environmental impact statement, environmental assessment, or any supplements to these documents) if the contention complies with the requirements in paragraph (c) of this section.

(3)    If two or more requestors/petitioners seek to co-sponsor a contention, the requestors/petitioners shall jointly designate a representative who shall have the authority to act for the requestors/petitioners with respect to that contention. If a requestor/petitioner seeks to adopt the contention of another sponsoring requestor/petitioner, the requestor/petitioner who seeks to adopt the contention must either agree that the sponsoring requestor/petitioner shall act as the representative with respect to that contention, or jointly designate with the sponsoring requestor/petitioner a representative who shall have the authority to act for the requestors/petitioners with respect to that contention.

(g) Selection of hearing procedures. A request for hearing and/or petition for leave to intervene may, except in a proceeding under 10 CFR 52.103, also address the selection of hearing procedures, taking into account the provisions of § 2.310. If a request/petition relies upon § 2.310(d), the request/petition must demonstrate, by reference to the contention and the bases provided and the specific procedures in subpart G of this part, that resolution of the contention

34a

necessitates resolution of material issues of fact which may be best determined through the use of the identified procedures.

(h) Requirements applicable to States, local governmental bodies, and Federally recognized Indian Tribes seeking party status.

(1)    If a State, local governmental body (county, municipality or other subdivision), or Federally-recognized Indian Tribe seeks to participate as a party in a proceeding, it must submit a request for hearing or a petition to intervene containing at least one admissible contention, and must designate a single representative for the hearing. If a request for hearing or petition to intervene is granted, the Commission, the presiding officer or the Atomic Safety and Licensing Board ruling on the request will admit as a party to the proceeding a single designated representative of the State, a single designated representative for each local governmental body (county, municipality or other subdivision), and a single designated representative for each Federally-recognized Indian Tribe. Where a State's constitution provides that both the Governor and another State official or State governmental body may represent the interests of the State in a proceeding, the Governor and the other State official/government body will be considered separate participants.

(2)    If the proceeding pertains to a production or utilization facility (as defined in § 50.2 of this chapter) located within the boundaries of the State, local governmental body, or Federally-recognized Indian Tribe seeking to participate as a party, no further demonstration of standing is required. If the production or utilization facility is not located within the boundaries of the State, local governmental body, or Federally-recognized Indian Tribe seeking to participate as a party, the State, local governmental body, or Federally-recognized Indian Tribe also must demonstrate standing.

35a

(3)    In any proceeding on an application for a construction authorization for a high-level radioactive waste repository at a geologic repository operations area under parts 60 or 63 of this chapter, or an application for a license to receive and possess high-level radioactive waste at a geologic repository operations area under parts 60 or 63 of this chapter, the Commission shall permit intervention by the State and local governmental body (county, municipality or other subdivision) in which such an area is located and by any affected Federally-recognized Indian Tribe as defined in parts 60 or 63 of this chapter if the requirements of paragraph (f) of this section are satisfied with respect to at least one contention. All other petitions for intervention in any such proceeding must be reviewed under the provisions of paragraphs (a) through (f) of this section.

(i) Answers to hearing requests, intervention petitions, and motions for leave to file new or amended contentions filed after the deadline. Unless otherwise specified by the Commission, the presiding officer, or the Atomic Safety and Licensing Board designated to rule on the request, petition, or motion—

(1) The applicant/licensee, the NRC staff, and other parties to a proceeding may file an answer to a hearing request, intervention petition, or motion for leave to file amended or new contentions filed after the deadline in § 2.309(b) within 25 days after service of the request, petition, or motion.
Answers should address, at a minimum, the factors set forth in paragraphs (a) through (h) of this section insofar as these sections apply to the filing that is the subject of the answer.

(2) Except in a proceeding under § 52.103 of this chapter, the participant who filed the hearing request, intervention petition, or motion for leave to file new or amended contentions after the deadline may file a reply to any answer. The reply must be filed within 7 days after service of that answer.

36a

(3) No other written answers or replies will be entertained.

(j)  Decision on request/petition.

(1)    In all proceedings other than a proceeding under § 52.103 of this chapter, the presiding officer shall issue a decision on each request for hearing or petition to intervene within 45 days of the conclusion of the initial prehearing conference or, if no pre-hearing conference is conducted, within 45 days after the filing of answers and replies under paragraph (i) of this section. With respect to a request to admit amended or new contentions, the presiding officer shall issue a decision on each such request within 45 days of the conclusion of any pre-hearing conference that may be conducted regarding the proposed amended or new contentions or, if no pre-hearing conference is conducted, within 45 days after the filing of answers and replies, if any. In the event the presiding officer cannot issue a decision within 45 days, the presiding officer shall issue a notice advising the Commission and the parties, and the notice shall include the expected date of when the decision will issue.

(2)    The Commission, acting as the presiding officer, shall expeditiously grant or deny the request for hearing in a proceeding under § 52.103 of this chapter. The Commission's decision may not be the subject of any appeal under § 2.311.

## 10 C.F.R. § 2.335

Consideration of Commission rules and regulations in adjudicatory proceedings.

(a)    Except as provided in paragraphs (b), (c), and (d) of this section, no rule or regulation of the Commission, or any provision thereof, concerning the licensing of production and utilization facilities, source material, special nuclear material, or byproduct material, is subject to attack by way of discovery, proof, argument, or other means in any adjudicatory proceeding subject to this part.

(b)    A participant to an adjudicatory proceeding subject to this part may petition that the application of a specified Commission rule or regulation or any provision thereof, of the type described in paragraph (a) of this section, be waived or an exception be made for the particular proceeding. The sole ground for petition of waiver or exception is that special circumstances with respect to the subject matter of the particular proceeding are such that the application of the rule or regulation (or a provision of it) would not serve the purposes for which the rule or regulation was adopted. The petition must be accompanied by an affidavit that identifies the specific aspect or aspects of the subject matter of the proceeding as to which the application of the rule or regulation (or provision of it) would not serve the purposes for which the rule or regulation was adopted. The affidavit must state with particularity the special circumstances alleged to justify the waiver or exception requested. Any other participant may file a response by counter-affidavit or otherwise.

(c)    If, on the basis of the petition, affidavit, and any response permitted under paragraph (b) of this section, the presiding officer determines that the petitioning participant has not made a prima facie showing that the application of the specific Commission rule or regulation (or provision thereof) to a particular aspect or aspects of the subject matter of the proceeding would not serve the purposes for which the rule or regulation was adopted and that application of the rule or

regulation should be waived or an exception granted, no evidence may be received on that matter and no discovery, cross examination, or argument directed to the matter will be permitted, and the presiding officer may not further consider the matter.

(d)    If, on the basis of the petition, affidavit and any response provided for in paragraph (b) of this section, the presiding officer determines that the prima facie showing required by paragraph (b) of this section has been made, the presiding officer shall, before ruling on the petition, certify the matter directly to the Commission (the matter will be certified to the Commission notwithstanding other provisions on certification in this part) for a determination in the matter of whether the application of the Commission rule or regulation or provision thereof to a particular aspect or aspects of the subject matter of the proceeding, in the context of this section, should be waived or an exception made. The Commission may, among other things, on the basis of the petition, affidavits, and any response, determine whether the application of the specified rule or regulation (or provision thereof) should be waived or an exception be made. The Commission may direct further proceedings as it considers appropriate to aid its determination.

(e)    Whether or not the procedure in paragraph (b) of this section is available, a participant to an initial or renewal licensing proceeding may file a petition for rulemaking under § 2.802.

**10 C.F.R. § 2.801**

Initiation of rulemaking.

Rulemaking may be initiated by the Commission at its own instance, on the recommendation of another agency of the United States, or on the petition of any other interested person, including an application for design certification under subpart B of part 52 of this chapter.

**10 C.F.R. § 50.65**

Requirements for monitoring the effectiveness of maintenance at nuclear power plants.

The requirements of this section are applicable during all conditions of plant operation, including normal shutdown operations.

(a)(1) Each holder of an operating license for a nuclear power plant under this part and each holder of a combined license under part 52 of this chapter after the Commission makes the finding under § 52.103(g) of this chapter, shall monitor the performance or condition of structures, systems, or components, against licensee-established goals, in a manner sufficient to provide reasonable assurance that these structures, systems, and components, as defined in paragraph (b) of this section, are capable of fulfilling their intended functions. These goals shall be established commensurate with safety and, where practical, take into account industrywide operating experience. When the performance or condition of a structure, system, or component does not meet established goals, appropriate corrective action shall be taken. For a nuclear power plant for which the licensee has submitted the certifications specified in § 50.82(a)(1) or 52.110(a)(1) of this chapter, as applicable, this section shall only apply to the extent that the licensee shall monitor the performance or condition of all structures, systems, or components associated with the storage, control, and maintenance of spent fuel in a safe condition, in a manner sufficient to provide

40a

reasonable assurance that these structures, systems, and components are capable of fulfilling their intended functions.

(2) Monitoring as specified in paragraph (a)(1) of this section is not required where it has been demonstrated that the performance or condition of a structure, system, or component is being effectively controlled through the performance of appropriate preventive maintenance, such that the structure, system, or component remains capable of performing its intended function.

(3) Performance and condition monitoring activities and associated goals and preventive maintenance activities shall be evaluated at least every refueling cycle provided the interval between evaluations does not exceed 24 months. The evaluations shall take into account, where practical, industry-wide operating experience. Adjustments shall be made where necessary to ensure that the objective of preventing failures of structures, systems, and components through maintenance is appropriately balanced against the objective of minimizing unavailability of structures, systems, and components due to monitoring or preventive maintenance.

(4) Before performing maintenance activities (including but not limited to surveillance, post-maintenance testing, and corrective and preventive maintenance), the licensee shall assess and manage the increase in risk that may result from the proposed maintenance activities. The scope of the assessment may be limited to structures, systems, and components that a risk-informed evaluation process has shown to be significant to public health and safety.

(b) The scope of the monitoring program specified in paragraph (a)(1) of this section shall include safety related and nonsafety related structures, systems, and components, as follows:

(1) Safety-related structures, systems and components that are relied upon to remain functional during and following design basis events to ensure the integrity of the reactor coolant pressure boundary, the

41a

capability to shut down the reactor and maintain it in a safe shutdown condition, or the capability to prevent or mitigate the consequences of accidents that could result in potential offsite exposure comparable to the guidelines in Sec. 50.34(a)(1), Sec. 50.67(b)(2), or Sec. 100.11 of this chapter, as applicable.

(2) Nonsafety related structures, systems, or components:

(i) That are relied upon to mitigate accidents or transients or are used in plant emergency operating procedures (EOPs); or

(ii) Whose failure could prevent safety-related structures, systems, and components from fulfilling their safety-related function; or

(iii) Whose failure could cause a reactor scram or actuation of a safety-related system.

(c) The requirements of this section shall be implemented by each licensee no later than July 10, 1996.


## 10 C.F.R. § 51.53

## Postconstruction environmental reports

(a) *General*. Any environmental report prepared under the provisions of this section may incorporate by reference any information contained in a prior environmental report or supplement thereto that relates to the production or utilization facility or site, or any information contained in a final environmental document previously prepared by the NRC staff that relates to the production or utilization facility or site. Documents that may be referenced include, but are not limited to, the final environmental impact statement; supplements to the final environmental impact statement, including supplements prepared at the license renewal stage; NRC staff-prepared final generic environmental impact statements; and environmental assessments and records of decisions prepared in connection with the construction

42a

permit, operating license, early site permit, combined license and any license amendment for that facility.

(b) *Operating license stage.* Each applicant for a license to operate a production or utilization facility covered by § 51.20 shall submit with its application a separate document entitled "Supplement to Applicant's Environmental Report—Operating License Stage," which will update "Applicant's Environmental Report—Construction Permit Stage." Unless otherwise required by the Commission, the applicant for an operating license for a nuclear power reactor shall submit this report only in connection with the first licensing action authorizing full-power operation. In this report, the applicant shall discuss the same matters described in §§ 51.45, 51.51, and 51.52, but only to the extent that they differ from those discussed or reflect new information in addition to that discussed in the final environmental impact statement prepared by the Commission in connection with the construction permit. No discussion of need for power, or of alternative energy sources, or of alternative sites for the facility, is required in this report. As stated in § 51.23, no discussion of the environmental impacts of the continued storage of spent fuel is required in this report.

(c) *Operating license renewal stage.* (1) Each applicant for renewal of a license to operate a nuclear power plant under part 54 of this chapter shall submit with its application a separate document entitled "Applicant's Environmental Report—Operating License Renewal Stage."

(2) The report must contain a description of the proposed action, including the applicant's plans to modify the facility or its administrative control procedures as described in accordance with § 54.21 of this chapter. This report must describe in detail the affected environment around the plant, the modifications directly affecting the environment or any plant effluents, and any planned refurbishment activities. In addition, the applicant shall discuss in this report the environmental impacts of alternatives and any other matters described

in § 51.45. The report is not required to include discussion of need for power or the economic costs and economic benefits of the proposed action or of alternatives to the proposed action except insofar as such costs and benefits are either essential for a determination regarding the inclusion of an alternative in the range of alternatives considered or relevant to mitigation. The environmental report need not discuss other issues not related to the environmental effects of the proposed action and the alternatives. As stated in § 51.23, no discussion of the environmental impacts of the continued storage of spent fuel is required in this report.

(3) For those applicants seeking a license renewal covered by Table B–1 for a nuclear power plant for which an operating license, construction permit, or combined license was issued as of June 30, 1995, the environmental report shall include the information required in paragraph (c)(2) of this section subject to the following conditions and considerations:

(i) The environmental report for the operating license renewal stage is not required to contain analyses of the environmental impacts of the license renewal issues identified as Category 1 issues in Appendix B to subpart A of this part.

(ii) The environmental report must contain analyses of the environmental impacts of the proposed action, including the impacts of refurbishment activities, if any, associated with license renewal and the impacts of operation during the renewal term, for those issues identified as Category 2 issues in Appendix B to subpart A of this part. The required analyses are as follows:

(A) If the applicant's plant utilizes cooling towers or cooling ponds and withdraws makeup water from a river, an assessment of the impact of the proposed action on water availability and competing water demands, the flow of the river, and related impacts on stream (aquatic) and riparian (terrestrial) ecological communities must be provided. The

applicant shall also provide an assessment of the impacts of the withdrawal of water from the river on alluvial aquifers during low flow.

(B) If the applicant's plant utilizes once-through cooling or cooling pond water intake and discharge systems, the applicant shall provide a copy of current Clean Water Act 316(b) Best Technology Available determinations and, if applicable, a 316(a) variance in accordance with 40 CFR part 125, or equivalent State permits and supporting documentation. If the applicant cannot provide these documents, it shall assess the impact of the proposed action on fish and shellfish resources resulting from impingement mortality and entrainment and thermal discharges.

(C) If the applicant's plant pumps more than 100 gallons (total onsite) of groundwater per minute, an assessment of the impact of the proposed action on groundwater must be provided.

(D) If the applicant's plant utilizes cooling ponds, an assessment of the impact of the proposed action on groundwater quality must be provided.

(E) All license renewal applicants shall assess the impact of refurbishment, continued operations, and other license renewal-related construction activities on important plant and animal habitats. Additionally, the applicant shall assess the impact of the proposed action on federally protected ecological resources in accordance with Federal laws protecting such resources, including but not limited to, the Endangered Species Act, the Magnuson-Stevens Fishery Conservation and Management Act, and the National Marine Sanctuaries Act.

(F) Reserved.

(G) If the applicant's plant uses a cooling pond, lake, canal, or discharges to publicly accessible surface waters, an assessment of the impact of the proposed action on public health from thermophilic organisms in the affected water must be provided.

(H) If the applicant's transmission lines that were constructed for the specific purpose of connecting the plant to the transmission system do not meet the recommendations of the National Electric Safety Code for preventing electric shock from induced currents, an assessment of the impact of the proposed action on the potential shock hazard from the transmission lines must be provided.

(I) Reserved.

(J) Reserved.

(K) All applicants shall identify any potentially affected historic and cultural resources and historic properties and assess whether continued operations and any planned refurbishment activities would affect these resources in accordance with the Section 106 of the National Historic Preservation Act and in the context of the National Environmental Policy Act.

(L) If the staff has not previously considered severe accident mitigation alternatives for the applicant's plant in an environmental impact statement or related supplement or in an environmental assessment, a consideration of alternatives to mitigate severe accidents must be provided.

(M) Reserved.

(N) Applicants shall provide information on the general demographic composition of minority and lowincome populations and communities (by race and ethnicity) and Indian Tribes in the vicinity of the nuclear power plant that could be disproportionately affected by license renewal, including continued reactor operations and refurbishment activities.

(O) Applicants shall provide information about other past, present, and reasonably foreseeable actions occurring in the vicinity of the nuclear plant that may result in a cumulative effect.

(P) An applicant shall assess the impact of any documented inadvertent releases of radionuclides into groundwater. The applicant shall include in its assessment a description of any groundwater protection program used for the surveillance of piping and components containing radioactive liquids for which a pathway to groundwater may exist. The assessment must also include a description of any past inadvertent releases and the projected impact to the environment (e.g., aquifers, rivers, lakes, ponds, ocean) during the license renewal term.

(Q) Applicants shall include an assessment of the effects of any observed and projected changes in climate on environmental resource areas that are affected by license renewal.

(iii) The report must contain a consideration of alternatives for reducing adverse impacts, as required by § 51.45(c), for all Category 2 license renewal issues in Appendix B to subpart A of this part. No such consideration is required for Category 1 issues in Appendix B to subpart A of this part.

(iv) The environmental report must contain any new and significant information regarding the environmental impacts of license renewal of which the applicant is aware.

(d) *Postoperating license stage.* Each applicant for a license amendment authorizing decommissioning activities for a production or utilization facility either for unrestricted use or based on continuing use restrictions applicable to the site; and each applicant for a license amendment approving a license termination plan or decommissioning plan under § 50.82 of this chapter either for unrestricted use or based on continuing use restrictions applicable to the site; and each applicant for a license or license amendment to store spent fuel at a nuclear power reactor after expiration of the operating license for the nuclear power reactor shall submit with its application a separate document, entitled "Supplement to Applicant's Environmental Report—Post Operating License Stage," which will update "Applicant's Environmental Report—Operating License Stage," as appropriate, to

47a

reflect any new information or significant environmental change associated with the applicant's proposed decommissioning activities or with the applicant's proposed activities with respect to the planned storage of spent fuel. As stated in § 51.23, no discussion of the environmental impacts of the continued storage of spent fuel is required in this report. The "Supplement to Applicant's Environmental Report—Post Operating License Stage" may incorporate by reference any information contained in "Applicant's Environmental Report—Construction Permit Stage."

## 10 C.F.R. § 51.95

### Postconstruction environmental impact statements.

(a) *General*. Any supplement to a final environmental impact statement or any environmental assessment prepared under the provisions of this section may incorporate by reference any information contained in a final environmental document previously prepared by the NRC staff that relates to the same production or utilization facility. Documents that may be referenced include, but are not limited to, the final environmental impact statement; supplements to the final environmental impact statement, including supplements prepared at the operating license stage; NRC staff prepared final generic environmental impact statements; environmental assessments and records of decisions prepared in connection with the construction permit, the operating license, the early site permit, or the combined license and any license amendment for that facility. A supplement to a final environmental impact statement will include a request for comments as provided in § 51.73.

(b) *Initial operating license stage*. In connection with the issuance of an operating license for a production or utilization facility, the NRC staff will prepare a supplement to the final environmental impact statement on the construction permit for that facility, which will update the prior

environmental review. The supplement will only cover matters that differ from the final environmental impact statement or that reflect significant new information concerning matters discussed in the final environmental impact statement. Unless otherwise determined by the Commission, a supplement on the operation of a nuclear power plant will not include a discussion of need for power, or of alternative energy sources, or of alternative sites, and will only be prepared in connection with the first licensing action authorizing full-power operation. As stated in § 51.23, the generic impact determinations regarding the continued storage of spent fuel in NUREG–2157 shall be deemed incorporated into the environmental impact statement.

(c) *Operating license renewal stage.* In connection with the renewal of an operating license or combined license for a nuclear power plant under 10 CFR parts 52 or 54 of this chapter, the Commission shall prepare an environmental impact statement, which is a supplement to the Commission's NUREG–1437, "Generic Environmental Impact Statement for License Renewal of Nuclear Plants" which is available in the NRC's Public Document Room, 11555 Rockville Pike, Rockville, Maryland 20852.

(1) The supplemental environmental impact statement for the operating license renewal stage shall address those issues as required by § 51.71. In addition, the NRC staff must comply with 40 CFR 1506.6(b)(3) in conducting the additional scoping process as required by § 51.71(a).

(2) The supplemental environmental impact statement for license renewal is not required to include discussion of need for power or the economic costs and economic benefits of the proposed action or of alternatives to the proposed action except insofar as such benefits and costs are either essential for a determination regarding the inclusion of an alternative in the range of alternatives considered or relevant to mitigation. In addition, the supplemental environmental impact statement prepared at the license renewal stage need not discuss other issues not related to the environmental effects of the proposed action

and the alternatives. The analysis of alternatives in the supplemental environmental impact statement should be limited to the environmental impacts of such alternatives and should otherwise be prepared in accordance with § 51.71 and appendix A to subpart A of this part. As stated in § 51.23, the generic impact determinations regarding the continued storage of spent fuel in NUREG–2157 shall be deemed incorporated into the supplemental environmental impact statement.

(3) The supplemental environmental impact statement shall be issued as a final impact statement in accordance with §§ 51.91 and 51.93 after considering any significant new information relevant to the proposed action contained in the supplement or incorporated by reference.

(4) The supplemental environmental impact statement must contain the NRC staff's recommendation regarding the environmental acceptability of the license renewal action. In order to make recommendations and reach a final decision on the proposed action, the NRC staff, adjudicatory officers, and Commission shall integrate the conclusions in the generic environmental impact statement for issues designated as Category 1 with information developed for those Category 2 issues applicable to the plant under § 51.53(c)(3)(ii) and any new and significant information. Given this information, the NRC staff, adjudicatory officers, and Commission shall determine whether or not the adverse environmental impacts of license renewal are so great that preserving the option of license renewal for energy planning decisionmakers would be unreasonable.

(d) *Postoperating license stage.* In connection with the amendment of an operating or combined license authorizing decommissioning activities at a production or utilization facility covered by § 51.20, either for unrestricted use or based on continuing use restrictions applicable to the site, or with the issuance, amendment or renewal of a license to store spent fuel at a nuclear power reactor after expiration of the operating or combined license for the nuclear power reactor, the NRC staff will prepare a supplemental environmental impact statement for

the post operating or post combined license stage or an environmental assessment, as appropriate, which will update the prior environmental documentation prepared by the NRC for compliance with NEPA under the provisions of this part. The supplement or assessment may incorporate by reference any information contained in the final environmental impact statement—for the operating or combined license stage, as appropriate, or in the records of decision prepared in connection with the early site permit, construction permit, operating license, or combined license for that facility. The supplement will include a request for comments as provided in § 51.73. As stated in § 51.23, the generic impact determinations regarding the continued storage of spent fuel in NUREG–2157 shall be deemed incorporated into the supplemental environmental impact statement or shall be considered in the environmental assessment, if the impacts of continued storage of spent fuel are applicable to the proposed action.


**10 C.F.R. § 54.29**

Standards for issuance of a renewed license.

A renewed license may be issued by the Commission up to the full term authorized by § 54.31 if the Commission finds that:

(a) Actions have been identified and have been or will be taken with respect to the matters identified in Paragraphs (a)(1) and (a)(2) of this section, such that there is reasonable assurance that the activities authorized by the renewed license will continue to be conducted in accordance with the CLB, and that any changes made to the plant's CLB in order to comply with this paragraph are in accord with the Act and the Commission's regulations. These matters are:

(1) managing the effects of aging during the period of extended operation on the functionality of structures and components that have been identified to require review under § 54.21(a)(1); and

51a

(2) time-limited aging analyses that have been identified to require review under § 54.21(c).

(b) Any applicable requirements of Subpart A of 10 CFR Part 51 have been satisfied.

(c) Any matters raised under § 2.335 have been addressed.


**10 C.F.R. § 54.31**

Issuance of a renewed license.

(a) A renewed license will be of the class for which the operating license or combined license currently in effect was issued.

(b) A renewed license will be issued for a fixed period of time, which is the sum of the additional amount of time beyond the expiration of the operating license or combined license (not to exceed 20 years) that is requested in a renewal application plus the remaining number of years on the operating license or combined license currently in effect. The term of any renewed license may not exceed 40 years.

(c) A renewed license will become effective immediately upon its issuance, thereby superseding the operating license or combined license previously in effect. If a renewed license is subsequently set aside upon further administrative or judicial appeal, the operating license or combined license previously in effect will be reinstated unless its term has expired and the renewal application was not filed in a timely manner.

(d) A renewed license may be subsequently renewed in accordance with all applicable requirements.

**10 C.F.R. § 54.33**

§ 54.33 Continuation of CLB and conditions of renewed license.

(a) Whether stated therein or not, each renewed license will contain and otherwise be subject to the conditions set forth in 10 CFR 50.54.

(b) Each renewed license will be issued in such form and contain such conditions and limitations, including technical specifications, as the Commission deems appropriate and necessary to help ensure that systems, structures, and components subject to review in accordance with § 54.21 will continue to perform their intended functions for the period of extended operation. In addition, the renewed license will be issued in such form and contain such conditions and limitations as the Commission deems appropriate and necessary to help ensure that systems, structures, and components associated with any time-limited aging analyses will continue to perform their intended functions for the period of extended operation.

(c) Each renewed license will include those conditions to protect the environment that were imposed pursuant to 10 CFR 50.36b and that are part of the CLB for the facility at the time of issuance of the renewed license. These conditions may be supplemented or amended as necessary to protect the environment during the term of the renewed license and will be derived from information contained in the supplement to the environmental report submitted pursuant to 10 CFR Part 51, as analyzed and evaluated in the NRC record of decision. The conditions will identify the obligations of the licensee in the environmental area, including, as appropriate, requirements for reporting and recordkeeping of environmental data and any conditions and monitoring requirements for the protection of the nonaquatic environment.

(d) The licensing basis for the renewed license includes the CLB, as defined in § 54.3(a); the inclusion in the licensing basis of matters such as licensee commitments does not change the legal status of those

53a

matters unless specifically so ordered pursuant to paragraphs (b) or (c) of this section.